Good morning and welcome to the Ninth Circuit. We have no submitted cases today. All five will be argued. The first case is Calles or Calles v. Barr. When you're ready, I gather we've got students arguing this morning and you're going to split the time seven and three. One goes for seven and the rebuttal's for three. And we have your supervising attorney, too. Okay. I think dividing the time is the hardest part, so it's pretty much downhill from here on out. And your time's not running yet, so don't worry. With experienced lawyers, what they tend to do is they'll have ten minutes or have 15 minutes. The first lawyer will get up and say, I'd like to save seven minutes for my colleague. And then we keep questioning and the seven minutes gets smaller and smaller and smaller. And the lawyer who's supposed to argue second is sitting there nervous and nervous and nervous. You've done a smart thing. You've set your clock at seven, so we know you're done. Okay. When you're ready. But if we take you over, we'll still give the other person three, right? Maybe. Oh, okay. No, I'm teasing. Yes, we will. Good morning, Your Honors. May it please the Court, my name is Naomi Doresami, joined by Max Williams and supervised by Attorney Catherine Evans. We represent Petitioner Eugenio Cruz-Calles in this matter. I'd like to reserve three minutes for rebuttal. Okay. Your Honors, this is a humanitarian asylum claim. This presents a very narrow threshold question. Whether the harms suffered by Petitioner during the Salvadoran Civil War rise to the level of past persecution, where he and his family were forcibly displaced from their land, three of his cousins were murdered by the army, and then he was kidnapped from his family home, beaten and threatened with death like his cousins. What about, okay, so if we find that he has established the requisite level of persecution, let's say we, and I can't tell you that we would agree on that because we don't talk about it before, but if we did, should we also conclude that he's met the other requirements for establishing past persecution as your brief proposes, or should it really at that point be a remand to the BIA to consider the nexus and government involvement requires in the first instance? Yes, Your Honor. If you find that the harms rise to past persecution, this is the only holding that the Board really made, and so this Court would not be able to go beyond that. Is that true that we can't go beyond with respect to nexus? I think it's almost certainly true with respect to sort of other harms if we get to that point, but the nexus is right there. The Board missed it, and if we credit it, it seems to me it's right there. Do we have to remand? I mean, I understand we can, but do we have to? On the issue of past persecution, if the harms rise to the level of past persecution, the Board's opinion does seem to assume nexus. It doesn't contest, doesn't seem to contest nexus. Judge Fletcher just said he thinks they missed it. I think they missed it. They don't seem to make a holding, but they also don't seem to contest Petitioner's claim that it is connected, that it is connected to the imputed political. But generally the process is that we don't, you know, make those kind of determinations in the first instance. I mean, we can make the legal determinations if he's credible and everything is determined to be true and we look at our case law and say, okay, that's past persecution. It seems to me that there's a good argument. I think you argue that he should just get humanitarian relief, but it seems to me that a remand should go back for the other two elements. I believe that would be correct. I believe that should this Court find that past persecution existed, as far as the level of harm, it would have to be remanded for consideration of the other parts of the persecution analysis. So you're relying on Ventura? I believe so. I'm going to take that as a yes. Yes. Okay. All right. And I do want to spend my time in argument focusing on why, even if the Court does not agree that the record compels reversal, why the order of removal still cannot stand, namely that the Board engages in critical legal errors by failing to identify the credible death threats as contributing to or constituting persecution and then abjectly failing to perform a cumulative analysis on the harms it does identify. So can you break down the harm? I think your brief is very articulate about your concern that the harms were taken one by one and you said they needed to be swept together and considered cumulatively under our case law. So there's the displacement from the land. Can you run through them for me? Yes. So the Board identifies three harms. First is the displacement from the land, and then the murders of the cousins, and then his 1994 assault. Right. So do we know when the cousins were murdered? Can you help me out with the time frame here? It's a little fuzzy. Yes, Your Honor. The record could have been made more clear below. What is clear is that petitioner has consistently testified that this all occurred in the decade of 1980 towards 1991. Which is the war, right? Correct. They're putting the brackets around that. That's when the cousins were killed? Yes, Your Honor. Okay. And he has consistently testified that these three cousins were all murdered in the same way. Exactly when is unclear, but based on the record, consistently he has testified that he had multiple family members murdered by the Salvadoran Army in the same way. Okay. And then as to the economic displacement, that is addressed by the Board, and then his 1994 beating. However, and this actually comes to the legal argument of not identifying the credible death threats that occurred during his 1994 beating. That is legal error. This court has identified that credible death threats can contribute to, and even in some cases, can constitute past persecution on their own. And this has been reiterated recently in Duran Rodriguez, identifying the small category of cases where death threats alone can rise to persecution. But if accompanied with other circumstances, such as harm to family members, harm to the petitioner himself, that that can constitute past persecution. And the failure of the Board to do so, to identify first that this is the case in the circuit, and also to even account for it in their past persecution analysis, constitutes legal error and requires remand so that the application of this court's precedent can be done. Now, as I read the transcript of the hearing, it's quite short. I couldn't find in that transcript any mention of what shows up in the police report. The police report says, these guys beat me up and said, basically, we're going to do the same thing to you as we did to your cousins. Should I attach any importance to the fact that he doesn't mention that in his oral testimony? Well, Your Honor, petitioner mentions that he submitted a police report in the transcript. And then throughout, even while the Board is citing two transcript pages about his 1994 beating, on these pages, he testifies that he was threatened. He does not go into specifics about them mentioning his cousin's name. But he specifically says, I was threatened. They were going to kill me. They told me that if I did not leave, that I would be eliminated. And so at the very least, that puts the Board on notice, this is an issue in this case, that he's received these death threats. Well, the police report's in the record. Yes. Admitted into the record twice, at Exhibits 3 and 6. And so that brings to the due process challenge that the failure of the Board to account for this police report, really it violates petitioner's due process rights because this is a piece of crucial probative evidence that the Board states there's no indication that the cousin's death was linked to him, but there is indication. That is the police report and failure to do so. So the Board missed it. Yes. Yes, Your Honor. I see that I am over time. If you have any further questions. And we won't punish your co-counsel for taking you over. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. The record here does not compel the conclusion that Mr. Cruz established past harm rising to the level of persecution. And so the Board of Immigration Appeals properly denied him asylum and found him ineligible for humanitarian aid. I'll ask you this, though. How do you distinguish Mr. Cruz-Calles' case from other cases such as, I don't know, is it Gu or Gual versus Sessions, in which the petitioner seems to have suffered a similar or lesser degree of physical harm, yet this course found that the evidence compelled a finding of past persecution? So we not only have to look at what the standard of review is, but we also have to look at our case law, and it seems that that case is a bit problematic for the government. The only physical harm that Mr. Cruz experienced in this case was the 1994 beating, when, according to his own version, unnamed, masked, unidentified masked individuals came to his mother's house that he was visiting. But he was kidnapped, right? Did he get kidnapped or no? No, I think that's the next case, Your Honor. Okay. This is just the 1994 case and the death of his cousins in El Salvador during the Civil War. So the only assault that he has is, pardon me, is a 1994 assault by unidentified individuals. He says who he thinks they are. He speculates that they're the Army, but the record doesn't establish any connection between the Army or the individuals and the death of his cousins during the Civil War. Can we focus for a moment not on the identification as to who did it, but as to the degree of harm, which is where Judge Callahan was directing her questions, because I share the same concern that I know we have other cases where this level of physical harm we have treated as compelling a finding of persecution, or at least rising to the level of persecution, assuming the other elements are satisfied. What are we supposed to do with other cases? Ignore them? No, Your Honor. But those other cases, the harm is not anywhere comparable, because in this case, it was he first said it was 30 minutes, but then he said, well, okay, maybe it wasn't 30 minutes. It was actually 10 minutes. And all it was was a beating that resulted in, I believe, some stitches and a cut to his neck. The court has held in other past persecution cases that harm that is even more egregious than that doesn't even qualify. Well, what was the harm? I'm sorry, Your Honor. Gu, I believe, was the – not Guo. Gu was the Chinese. GUO. I'm sorry. Do you mean GU or GUO? GUO is how – I don't know. I might not be saying it right. Okay. So which – the Guo case, I'm not sure. It's 897 Fed Third 1208. It's a Ninth Circuit case in 2018. Okay. In that – oh, that was the case where Mr. Guo was told not to practice his religion any longer as part of his conditions after he was released from detention and he was beaten. But in that case, it wasn't just the – it was the – the harm was not just the beating. It was also because of the restriction on his ability to practice religion. Well, but here you have – I mean, he enumerates two other things and three relatives that were extrajudicially killed. So, I mean, that's bad. Well, and just to maybe piggyback, the opposing counsel talked about a credible death threat and that our case law has in the past indicated that a credible death threat alone is sufficient. There's the being forced from the family land and then there's the beating. And then, as Judge Callahan said, there's the cousin. So what about that cumulative – this seems to me to be not your strongest argument. I really want to know what your best shot is. But if that is viewed cumulatively, is it the government's position that that does not rise to the level of – That's correct. – persecution under the Ninth Circuit case law? That's correct, Your Honor. What's your strongest shot at that, please? Because the 1994 – under this record, the 1994 incident isn't even remotely connected to the harms suffered. It basically boils down to the economic persecution, displacement, that claim combined with the murder. So you're not viewing it cumulatively? That's your position, really, that it's improper to view it cumulatively because we can't show on account of? Is that your position? Right, Your Honor. Because – well, because he didn't connect the murder of – as the board said, he didn't connect the murder of his cousins to the 1994 incidents. Okay. So when we talk about – forgive me to just break it down. So when we talk about the government thinking this – you know, taking the position this doesn't rise to the level of, the this excludes his own beating in 1994 because you think there hasn't been a showing that these are connected? Right, because it has to be persecution on account of – Yeah, okay. – a protected ground. Did the agency make any findings as to whether Cruz's, Calles' persecution occurred on account of a protected ground? His claim is – Or was committed by the government or forces the government was unwilling or unable to control? No, Your Honor. But his claim is that it was based on political opinion. So the board, in analyzing the case, looked at these allegations of harm and said, which ones are connected to the claim of harm on account of political persecution? Well, let me take you to a hypothetical then. Let's say – let's just say, and I'm saying this hypothetically, let's say we find error in the agency's finding that Calles did not suffer a level of harm constituting persecution. If we make that, what's the proper remedy? What – is it a remand for the other two elements or is it – That's correct, Your Honor. The board here didn't make – neither the board or the immigration judge made a ruling as to whether or not this was on account of a protected ground. It simply said the harm that he suffered does not rise to the level of persecution. I think I heard you say that his beating was not remotely connected to the killing of his cousins. Did you say that? During the Civil War. That's correct, Your Honor. The record doesn't have – So what am I supposed to do with the police report? These guys come to the house. His mother opens the door. When she did, three individuals entered immediately, tying up to Clarence's hands, dragging him around the neighborhood. Now, that under American law is kidnapping. When they'd walk for several minutes, they'd beat him, telling him they would have – he would have to leave the country. Otherwise, the same would happen to him as happened to his relatives, Rupert and George. You said there's no remote connection? There's a connection right there. There's a connection to cousins. It's unclear which cousins because according to the record, the cousins who were murdered during the Civil War in the early 1980s were three cousins. He names them specifically, Roberto, Andres, and Cruz, whereas the police report specifically says that these unidentified individuals – he doesn't know who they are. They were masked. They never said anything about why they wanted to talk to him or why they were even picking on him. And they named – the threat that they said was your cousins, Roberto and, I believe, Gregorio. Gerardo. Right. But it was two different – two cousins, not three, and different cousins at that. Although I thought you said the first one, that one of the three was Roberto. That's correct, Roberto. So it's not clear whether he has more than one cousin who's named as Roberto who was more recently killed. And he also submitted – They're scratching. But he also submitted to support his claim the pastor's statement saying that in 1995, Mr. Cruz had to leave the country because these gangs came and threatened to kill him just as it did two of his cousins. Again, there's a similarity of two cousins who were murdered unless he got out of the country. But, again, there's no indication that that was remotely connected to the earlier murder of the three cousins during the Civil War. But in your view, he had five cousins who were murdered. He could have – it's not clear. doesn't compel the conclusion that he wants the court to accept, which is that there is this connection and that the murder of his cousins is what led to the 1994 beating. The record simply doesn't compel that conclusion. And it was his burden to establish that connection. Let me ask you a question. I didn't ask it of the other side because I don't think they are aware of what we do sometimes. All right. This person, Mr. Calles, he doesn't appear to be one of the worst people that we have. He got TPS several times and then learned that on the – that he had been removed in absentia. But apparently the court corrected that because they believed that it was a result of the IAC. So he's not like some of the people that we have that are completely under the radar and then we finally find them when they commit a crime or they've got convictions and any number of things. Is this a case that the government would consider mediating? The government is – I would – I'm always happy to take back to DHS any requests for mediation, Your Honor. I don't promise that anything would be resolved, but we're certainly – I'm happy to take back any requests for mediation. Okay. Unless the court has any further questions. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honors. I'd like to address a few quick points. May it please the court, my name is? May it please the court, my name is Max Williams, co-counsel for Petitioner Daniel Cruz-Cayas in this matter. So how many cousins got killed? Five? Three? Four? Well, the petitioner stated that three cousins were killed. The government just told me maybe it was five. No. The petitioner was established as being credible. There was no dispute on that. The government never contested that, and the board never made an adverse credibility finding. And under Cole v. Holder, when there is no IJ or BIA adverse credibility finding, the facts are deemed true. And then the only next step is to find whether there's a reasonable inference that these harms rise to the level of past persecution. To Judge Callahan, I'd just like to clarify that for the proceedings of this matter, if the court does find that substantial evidence compels the conclusion of past persecution, we'd ask that you reverse the board's holding and send back down with a finding of past persecution so that the analysis of other serious harms under humanitarian asylum can be done. Nexus was assumed by the board, though nothing was explicitly stated. In addendum page 5. Where in the board's opinion do you find that the nexus was assumed? If you look at addendum page 5, when they're reciting the factual findings. ER 5? It's addendum 5 of the petitioner's opening brief, Your Honor. Wait a minute. I believe it's. Okay, hold on. That's in a different place. Okay. It probably is. No, that's right. That's right. I don't have the brief. I'm looking for something in the record. You have the ER site? I think it's going to be ER 5. AR 5, Your Honor. Okay. Okay. And in that factual recitation, the board does state that the petitioner claims that these harms were on account of a mistaken belief that he and his family were accused of being guerrilla subversives. And since the board made no contrary finding to that, it is assumed that nexus was established. This was on account of an imputed political opinion. Sorry. Forgive me. I know where you are in the record now. I'm on the right page, I think. But where on this page should they talk about nexus? It's the first full paragraph at the bottom before they get into the economic displacement analysis for the past persecution. It's the second full paragraph. Excuse me. You'll see right after it states what it accounts for three harms, the physical mistreatment, the murder of his three cousins, and then the displacement from their land. The next sentence, I believe, states that. Okay. Do you have the board's opinion in front of you? What's the page of the board's opinion? Maybe you should do it that way because, of course, those are not the same page numbers. So it would be page three of the board's opinion, Your Honor. Okay. That's where I was. And it states. Sorry. So it's the second full paragraph. It states the respondent claims eligibility for asylum. On the basis of his past experiences during the Civil War. That's where you want me to read? Correct. During which time he claims to have been targeted due to mistaken belief that he and members of his family were members of the guerrilla forces. I'm not sure how much to make of this, but the board cites evidence and it cites transcript. It also cites Exhibit 2. Do you know what Exhibit 2 was? Is the police report? There are two translations of the police reports. Is one of those Exhibit 2? No, Your Honor. The exhibits for the police report, I believe, were Exhibits 5 and 6. Those are at AR Record Site 217 and 459. I'm not sure how we get nexus out of this. They state his claims and then they, on the next paragraphs, just say, we agree with the IJ that the respondent has not established past persecution in El Salvador that rises to the level of. That's their finding, right? Yes, Your Honor, but they never contest the imputed political opinion, and by stating the factual recitation, they are assuming that this is based on an imputed political opinion. I read that differently. It just seems to me they skipped right over it and they haven't reached it yet. But I'm trying to – I'll give it another look, and you've pointed out where you want me to look, so. Okay. Thank you, Your Honor. So the harms suffered by Petitioner are very similar in the context of Salvadoran and Latin American Civil War. As we stated in our brief, you have Navas, Parada, Del Carmen Molina, and Cordon Garcia. In Navas and Parada, which was specifically in the context of the Salvadoran Civil War, you had family members killed and you had a credible death threat, which is exactly what the Petitioner has here. The police report, which wasn't properly considered, connects the murders of his cousins to his own 1994 assault when they specifically referenced his cousins. And as Navas held, you know, there's no other reasonable inference other than to connect these harms. Even with the passage of time, that's not dispositive so long as there's a connection between the harms and the harm suffered by the Petitioner. It does appear that I'm out of time, Your Honor, if you have any other further questions. Thank you for your time. I thank the government as usual, but I also want to thank the students. You did a very nice job. That's not a telegraphing of our result. Thank you very much. But we appreciate both that. I think it's a good experience to do it, and your preparation was good. I think both the government and the students, and there's a need for people to do representation in these cases, and we also, it facilitates our ability to resolve these. So we thank everyone that comes every day, but I think that this is kind of a special experience. Okay. Thank you. Thank you. Case last argued, submitted. The next case, Gonzalez v. Sbar.
judges: W. Fletcher, Callahan, Christen